**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: ) | |
| ) | |
| LBD, PLLC, ) | Case No. 20-10414-BFK |
| ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION AND**
**ORDER DENYING CONFIRMATION OF**
**DEBTOR'S SECOND AMENDED PLAN**
**AND SETTING STATUS HEARING**

This matter came before the Court for: (a) confirmation of the Debtor's Second Amended Plan of Reorganization (Docket No. 121); and (b) the U.S. Trustee's Motion to Convert or Dismiss (Docket No. 66). The Court heard the evidence on June 15, 2021. The Debtor filed a post-trial Memorandum of Law, which the Court has reviewed. Docket No. 206. For the reasons stated below, the Court will deny confirmation of the Debtor's Second Amended Plan. The Court will set a status hearing, as set forth below.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

*A.   The Debtor's Chapter 11 Case.*

1.   LBD, PLLC ("the Debtor" or "LBD") is a law firm founded in 2010, and doing business under the name DiPietro Law Group. Specializing in domestic relations law, the firm has offices in Virginia and D.C. It presently has eight attorneys, plus support staff. The firm currently has between 80 and 100 clients.

2.   The firm filed a Voluntary Petition under Chapter 11 with this Court on February 9, 2020. Docket No. 1. No creditors committee was appointed in the case.

3. The Debtor is 100% owned by Joseph DiPietro, who is also the managing partner of the firm.

4. Mr. DiPietro has an annual salary of $250,000.00 with LBD.

5. Beginning in 2018, LBD began to experience disputes with a number of former employees. These disputes turned into litigation, which was expensive to defend and was not covered by insurance.

6. LBD began to borrow money from non-traditional lending sources, which also was expensive.

7. As with most small law firms, LBD experienced a decline in revenue as a result of the COVID pandemic. Revenues decreased from April to June 2020. Beginning in July 2020, the firm began to see an increase in revenues.

8. LBD had gross revenues of approximately $1,800,000.00 in 2020. It has had gross revenues of approximately $800,000.00 through May 2021, and is on track to achieve gross revenues comparable to its revenues in 2020.

B. *Seamless Management.*

9. Before the bankruptcy case was filed, Mr. DiPietro formed a company by the name of Seamless Management Group, LLC ("Seamless Management"). Seamless Management was, according to Mr. DiPietro's testimony, "an attempt to create a profit center out of [LBD's] overhead." Mr. DiPietro is the 100% owner of Seamless Management.

10. LBD's non-attorney staff employees are employed by, and paid through, Seamless Management. Mr. DiPietro described this as a "pass-through" arrangement.

11. Mr. DiPietro has a salary of $100,000.00 per year from Seamless Management, in addition to his salary of $250,000.00 with LBD.

12. Mr. DiPietro testified that in 2020, he received $57,000.00 in salary from Seamless Management.

13. He further testified that he received $46,000.00 in salary from Seamless Management through the end of May 2021.

14. LBD never sought approval from this Court of its arrangement with Seamless Management.

15. A chart of the Debtor's payments to Seamless Management, constructed from the Debtor's Monthly Operating Reports, showing amounts paid to Seamless Management from the filing of this bankruptcy case through June 11, 2021, is attached to this Order as Exhibit A.

16. It is not possible to tell from the Debtor's Monthly Operating Reports precisely how much Seamless Management paid to Mr. DiPietro during the case because Seamless Management is not a reporting entity for purposes of the Debtor's Monthly Operating Reports. The Court accepts Mr. DiPietro's testimony on the amounts paid to him personally by Seamless Management during this case.

C. The Owner Draws.

17. Also during the course of this Chapter 11 case, Mr. DiPietro paid himself a total of $31,000.00 in Owner Draws, in addition to his salary at LBD. A Chart of the Owner Draws, constructed from the Debtor's Monthly Operating Reports, is attached as Exhibit B.

18. The Debtor did not seek approval of the Owner Draws, and the Court never approved them.[1]

D. The B.F. Saul Lawsuit.

---

[1] The Debtor's Second Amended Disclosure Statement did not disclose the payment of the Owner Draws. Debtor's Memorandum of Law, Docket No. 206, fn. 2.

19. In January 2021, the Debtor filed a lawsuit against B.F. Saul in the Circuit Court of Montgomery County, Maryland. The Debtor alleges that B.F. Saul committed malpractice in advising the Debtor on its insurance needs.

20. The Court approved an Application to Employ Special Counsel for this lawsuit under Section 327(e) in January 2021. Docket No. 104.

21. Special counsel filed two Interim Applications for Compensation. Docket Nos. 150, 174. The U.S. Trustee objected on the ground that special counsel had not disclosed all of its connections under Rule 2014(a). Docket No. 195.

22. The Court recently approved special counsel's fees in part, and denied special counsel's fees in part, after finding that special counsel failed to disclose that it was simultaneously representing Mr. DiPietro individually in the same lawsuit. Docket No. 209.

E.  *The Debtor's Second Amended Plan.*

23. On February 22, 2021, the Debtor filed its Second Amended Disclosure Statement and Second Amended Plan of Reorganization ("the Plan"). Docket Nos. 120, 121.

24. The Court approved the Second Amended Disclosure Statement on March 11, 2021 and set the Plan for a confirmation hearing on June 15, 2021. Docket No. 140.[2]

25. A brief description of the treatment of the creditors under the Plan is as follows:

- Priority Tax Claims - $20,000.00, to be paid in full in equal quarterly installments.

- 401(k) Safe Harbor Payment - $58,415.72, to be paid in full within 60 months of the Effective Date.

---

[2] The Court was advised at the Disclosure Statement hearing that the Debtor was behind in the filing of its tax returns. The confirmation hearing had to be set out far enough to allow for the filing of the returns. The Debtor advised the Court on June 9, 2021, that the returns were filed. Docket No. 194.

4

- Priority Wage Claims (Class 1) - $32,543.00, to be paid in full within 12 months of the Effective Date.

- Pass-Through Client Expenses (Class 2(a)) - $17,880.97, to be paid in full within 12 months of the Effective Date.

- General Unsecured Claims (Class 2(b)) - $1,085,161.76, $70,000.00, for a 10% distribution to be paid over a period of 48 to 72 months, beginning after 12 months from the Effective Date.³

- First Savings Bank (Class 3) - unimpaired, to be paid according to contract terms.

- EagleBank (Class 4) - bifurcated, with a secured claim in the amount of $150,000.00 to be paid according to an agreed schedule of payments; the balance is a Class 2(b) General Unsecured Claim.

Docket Nos. 120, 121.

26.  The Debtor received 3 votes in favor of confirmation of the Plan – 2 Ballots in Class 2(b) (General Unsecured Claims), and EagleBank voted its Class 4 secured claim in favor of the Plan. Docket No. 196.⁴

27.  No party in interest objected to confirmation of the Plan.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. Confirmation of the Debtor's Second Amended Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The

---

³ The Plan calls for the payments over a period of up to 72 months. Debtor's Exhibit A uses a shorter period of 48 months, but still beginning in Month 13 after the Effective Date of the Plan.
⁴ Although it isn't clear from the Summary of Ballots, it is likely that EagleBank voted in favor of confirmation in Class 2(b) as an unsecured creditor, because it also voted its Class 4 Claim in favor of the Plan. There appears to be only one other vote in favor of the Plan. These votes are sufficient to carry both Class 2(b) and Class 4, and to meet the requirement for confirmation of one impaired class voting in favor of the Plan. 11 U.S.C. § 1129(a)(10).

U.S. Trustee's Motion to Convert or Dismiss is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

The Court found at the confirmation hearing that the Debtor met almost all of the requirements for confirmation under Bankruptcy Code Section 1129(a), including that the Plan have one impaired, accepting class, that the plan is feasible, and that the plan meets the liquidation test. The one issue, the Court noted, was whether the Debtor's Second Amended Plan met the good faith test under Bankruptcy Code Section 1129(a)(3).

The Fourth Circuit has held with respect to the good faith test:

> A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan. . . .

*Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir. 1982) *quoting* 9 Collier on Bankruptcy 9.20, at 319 (14th ed. 1978).

The Court has an independent duty to ensure that the Debtor's Plan meets the good faith requirement, notwithstanding the lack of objection from creditors. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) ("the Code makes plain that bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)"); *Gorman v. Birts (In re Birts)*, 2012 WL 3150384, at *5 (E.D. Va. Aug. 1, 2012); *In re Willner*, 2020 WL 864130, at *7 (Bankr. E.D. Va. 2020); *In re Parandeh*, 2015 WL 430383, at *6 (Bankr. E.D. Va. Jan. 28, 2015). The Debtor, as the Plan proponent, bears the burden of proof on all confirmation issues, including that of good faith. *In re Crowe*, 2021 WL 2212005, at *6 (Bankr. Az. June 1, 2021); *In re Council of Unit Owners of 100 Harborview Condominium*, 572 B.R. 131, 136 (Bankr. D. Md. 2017).

A. *The Seamless Management Payments.*

Chapter 11 Debtors are authorized to conduct business transactions in the ordinary course of business, but they must seek Court approval of non-ordinary transactions. 11 U.S.C. § 363(b)(1). The courts generally apply a two-part test to determine ordinariness under Section 363(b) – a "horizontal test," which measures the transaction objectively against industry standards, and a "vertical test," in which the courts "analyze the challenged transaction from a hypothetical creditor's point of view and ask whether it 'subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit." *In re HealthTrio, Inc.*, 599 B.R. 119, 127-29 (D. Colo. 2019) *quoting Braunstein v. McCabe*, 571 F.3d 108, 125 (1st Cir. 2009); *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 399-400 (Bankr. D. Del. 2011). If a transaction fails under either test, it is not considered ordinary. *Id.* The Debtor agrees that this is the proper test to determine whether the payments were made in the ordinary course of business. Debtor's Memorandum of Law, Docket No. 206 at 6-7.

Transactions that benefit insiders require special scrutiny under Section 363(b). *In re Catalina Sea Ranch, LLC*, 2020 WL 1900308, at *6-7 (Bankr. C.D. Cal. April 13, 2020); *In re Alaska Fishing Adventure, LLC*, 594 B.R. 883, 887 (Bankr. D. Alaska 2018); *In re Oakwood Country Club, Inc.*, 2010 WL 4916436, at *5 (Bankr. W.D. Va. April 6, 2010).[5]

In this case the Court finds that the Seamless Management payments were not made in the ordinary course, under the horizontal test. The Debtor offered no evidence on what other law firms of its size do with respect to the hiring of, and the compensation of, non-attorney staff employees.[6] In the Court's experience, the hiring and compensation of all of a law firm's non-attorney employees through a third-party vendor as a "pass through" is unusual. Mr. DiPietro

---

[5] The Court agrees with the Debtor that this is not an issue involving the employment of professionals under Bankruptcy Code Section 327.
[6] The Court advised counsel for the Debtor at the Disclosure Statement hearing that this would be an issue at the confirmation hearing.

7

testified that Seamless Management was created in an "attempt to create a profit center out of [LBD's] overhead." As the 100% owner of LBD, Mr. DiPietro was the only one who stood to benefit from outsourcing the LBD employees with Seamless Management. There was no testimony, for example, that Mr. DiPietro ever shopped for other management companies that might have supplied the support staff to LBD at a lesser cost. The Debtor never sought approval of its arrangement with Seamless Management. The arrangement fails the horizontal test. The Court finds that the Debtor did not meet its burden to demonstrate that the payments were made in the ordinary course of business.

Why, then, does the arrangement constitute bad faith on the part of the Debtor? The answer is because, during the course of sixteen months in Chapter 11, Mr. DiPietro, LBD's and Seamless Management's 100% owner, paid himself $57,000.00 in 2020 and $46,000.00 in 2021, for a total of $103,000.00 – *in addition to his $250,000.00 salary at LBD, plus the Owner Draws, discussed below* – all without Court approval. Compare these payments to what the unsecured creditors will receive under the Debtors' Second Amended Plan: a total of $70,000.00 over a period of between 48 and 72 months, for a distribution of approximately 10% on their claims, beginning 12 months after the Effective Date of the Plan. Docket No. 121. Mr. DiPietro compensated himself in a way that lacked transparency, as though the firm were not in Chapter 11 at all.

The Court does not take issue with the fact that the Debtor received value from Seamless Management, in the form of payment of the non-lawyers' compensation. This same value, however, is not borne out with respect to Mr. DiPietro's compensation. Mr. DiPietro's $250,000.00 at LBD is not tied to his personal billings or collections in any way. Mr. DiPietro did not testify as to the level of his personal billings or collections. There is, therefore, no way

8

for the Court to determine that any time spent managing LBD can be attributed to his $100,000.00 salary at Seamless Management, as opposed to his $250,000.00 salary at LBD. No evidence was introduced concerning how many hours Mr. DiPietro spent on management, as opposed to legal matters. The transfers to Seamless Management are all in round numbers, paid twice a month, thereby indicating that Mr. DiPietro was compensating himself from available cash flow without regard to the number of hours spent on management of the firm. *See* Docket No. 178 (March 2021 MOR - $8,500.00, $10,500.00); Docket No. 180 (April 2021 MOR - $10,500.00, $12,500.00); Docket No. 193 (May 2021 MOR - $5,500.00, $17,500.00); Docket No. 214 (June 2021 MOR - $10,500.00, $13,500.00). This is precisely why transactions with insiders need to be examined with additional scrutiny – there is no way for the Court to tell, after the fact, whether Mr. DiPietro's compensation at Seamless Management, which was paid for 100% by LBD, can be justified.

The Court finds that the Debtor's Second Amended Plan does not meet the good faith test. The Court, therefore, will deny confirmation of the Debtor's Second Amended Plan.

    *B. The Owner Draws.*

During the course of this case, Mr. DiPietro took a total of $31,000.00 in "Owner Draws" from LBD. These Draws were not authorized by the Court. There was no evidence that these Draws were taken in lieu of salary. Like the payments to Seamless Management, the Owner Draws are all in round numbers, thereby indicating that they are not related to any actual billings or collections on Mr. DiPietro's part. *See* Docket No. 133 (January 2021 MOR - $5,000); Docket No. 178 (March 2021 MOR - $6,000). The Court found Mr. DiPietro's testimony on this subject to be vague and confusing, basically stating that his accountant advised him to take the Owner Draws.

Again, LBD is proposing to pay its general unsecured creditors a total of $70,000.00, a return of 10% on their claims, over a period of from 48 to 72 months, beginning at the end of 12 months from the Effective Date of the Plan. This just isn't fair to the creditors.

The Court finds that the Debtor's Second Amended Plan does not meet the good faith test because of the payment of the unauthorized Owner Draws during the course of the case.

C.  *Where We Go From Here.*

The Court turns to the question of where the case goes from here. The Court could grant the U.S. Trustee's Motion to Convert or Dismiss, or it could convert the case to Chapter 7 *sua sponte*. The Court recognizes, however, that LBD has employees, both attorneys and non-attorney staff, all of whom would be out of their jobs if the case were converted. The Court, therefore, will grant the Debtor one more opportunity to file a Plan in good faith. Any Amended Plan must repay the unsecured creditors the currently proposed 10% distribution <u>plus</u> an amount equal to: (a) the monies paid to Mr. DiPietro during the course of this case from Seamless Management (a total of $103,000.00), <u>and</u> (b) the amount of the unauthorized post-petition Owner Draws taken during the course of this case ($31,000.00). The amount of time to pay the unsecured creditors may not be lengthened as a result of the Court's ruling. Rather, these amounts must be paid to the general unsecured creditors over a period of between 48 and 72 months, beginning 12 months after the Effective Date of the Plan. If, on the other hand, the Debtor does not want to propose a Third Amended Plan that comports with this Order, it should so advise the Court at or before the status hearing on the U.S. Trustee's Motion, and the Court will convert the case to Chapter 7.[7]

---

[7] In the absence of confirmation of an Amended Plan that meets the good faith requirement, conversion of the case would be in the best interests of the creditors and other parties in interest. A Chapter 7 Trustee would have the ability to inquire into the possible avoidance and recovery of the Seamless Management fees and the Owner Draws

The Court will inquire at the Disclosure Statement hearing on any proposed Amended Plan into the source for the additional payments to the Unsecured Creditors. A proposed reduction in salaries to the attorneys or staff (other than Mr. DiPietro) to meet the Court's requirements for confirmation will be viewed very unfavorably.

Finally, the recent hearing on the Objection filed by the U.S. Trustee to the two Interim Fee Applications of General Counsel, P.C., LBD's counsel in the B.F. Saul lawsuit, causes the Court to question why the proceeds, if any, of the B.F. Saul claims are not being contributed to the general unsecured creditors. The Court will inquire as to this matter at the Disclosure Statement hearing on any Amended Plan.

The Court will set a status hearing on the U.S. Trustee's Motion to Convert or Dismiss.

## Conclusion

It is therefore **ORDERED**:

A. The Court denies confirmation of the Debtor's Second Amended Plan.

B. The Debtor is granted leave to file a Third Amended Disclosure Statement and Plan, within 21 days of the entry of this Order.

C. The Court will hold a status hearing on **August 24, 2021, at 11:00 a.m.** to consider: (a) approval of a Third Amended Disclosure Statement, if any, filed by the Debtor; and (b) the U.S. Trustee's Motion to Convert or Dismiss.

D. The parties must appear via video conference for this hearing through the Court's Zoom for Government (ZoomGov) program. Parties must e-mail a completed registration request form (available at https://www.vaeb.uscourts.gov/wordpress/?wpfb_dl=871) to EDVABK-ZOOM-

---

under 11 U.S.C. §§ 549 and 550(a). Further, a Chapter 7 Trustee would have the ability to prosecute, or settle with Court approval, the Debtor's claims against B.F. Saul for the benefit of the creditors.

Judge_Kenney@vaeb.uscourts.gov in accordance with Judge Kenney's procedures for appearing by ZoomGov. This program requires pre-registration that should be completed prior to the hearing date.

E. The Clerk will mail copies of this Memorandum Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Jul 30 2021

Alexandria, Virginia

/s/ Brian F Kenney
Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: July 30, 2021

Copies to:
LBD, PLLC
P.O. Box 1250
Fairfax, VA 22038
*Chapter 11 Debtor*

Joseph DiPietro
4157 Chain Bridge Rd.
Fairfax, VA 22030
*Debtor Designee*

Jeffery T. Martin, Jr., Esquire
601 13th Street NW
Suite 900 South
Washington, DC 20002
*Counsel for Debtor*

Alexander M. Laughlin, Esquire
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
*Counsel for First Savings Bank*

Benjamin P. Smith, Esquire
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
*Counsel for Eagle Bank*

Jack Frankel, Esquire
Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
*Counsel for U.S. Trustee*

Exhibit A

| Payments to Seamless Management | Amount |
|---|---|
| 03/12/2020 | $152.65 |
| 04/06/2020 | $50.00 |
| 04/16/2020 | $7,000.00 |
| 04/30/2020 | $5,000.00 |
| 06/11/2020 | $5,000.00 |
| 07/09/2020 | $7,500.00 |
| 07/23/2020 | $10,000.00 |
| 08/06/2020 | $12,500.00 |
| 08/20/2020 | $10,500.00 |
| 09/03/2020 | $8,500.00 |
| 09/17/2020 | $8,500.00 |
| 10/15/2020 | $10,500.00 |
| 10/30/2020 | $8,500.00 |
| 11/12/2020 | $7,500.00 |
| 11/25/2020 | $9,500.00 |
| 12/10/2020 | $8,500.00 |
| 12/24/2020 | $8,500.00 |
| 01/07/2021 | $9,500.00 |
| 01/20/2021 | $9,500.00 |
| 02/04/2021 | $8,500.00 |
| 02/18/2021 | $9,500.00 |

| | |
|---|---|
| 03/04/2021 | $8,500.00 |
| 03/18/2021 | $10,500.00 |
| 04/01/2021 | $10,500.00 |
| 04/12/2021 | $250.00 |
| 04/15/2021 | $12,500.00 |
| 05/14/2021 | $5,500.00 |
| 05/28/2021 | $17,500.00 |
| 06/11/2021 | $10,500.00 |
| Total: | $240,452.65 |

Exhibit B

| Owner Draws (Payments to Mr. DiPietro) | Amount |
|---|---|
| 05/15/2020 | $7,500.00 |
| 06/17/2020 | $6,000.00 |
| 10/15/2020 | $6,500.00 |
| 01/26/2021 | $5,000.00 |
| 03/18/2021 | $6,000.00 |
| Total: | $31,000.00 |